No. 04-044

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 38

STATE OF MONTANA,

    Plaintiff and Respondent,

    v.

VICTOR WEBSTER, SR.,

    Defendant  and Appellant.


APPEAL FROM:    District Court of the Eighth Judicial District,
                In and For the County of Cascade, Cause No. BDC 2002–540
                Honorable Julie Macek, Presiding Judge


COUNSEL OF RECORD:

        For Appellant:

            Chad Wright, Appellate Defender, Helena, Montana

        For Respondent:

            Hon. Mike McGrath, Attorney General; C. Mark Fowler,
            Assistant Attorney General, Helena, Montana

            Brant Light, Cascade County Attorney; Susan L. Weber,
            Cascade Deputy County Attorney, Great Falls, Montana


                        Submitted on Briefs:  January 4, 2005

                        Decided:   February 22, 2005


Filed:

                    _____
                                    Clerk

Chief Justice Karla M. Gray delivered the Opinion of the Court.

¶1 A jury in the Eighth Judicial District Court, Cascade County, found Victor Webster, Sr., guilty of possession of dangerous drugs and possession of drug paraphernalia. The District Court imposed sentence and entered judgment. Webster appeals, arguing that his counsel was ineffective in several respects. We conclude Webster's claims of ineffective assistance of counsel cannot be addressed without considering matters outside the record and, accordingly, this appeal must be dismissed.

¶2 We restate the issue as whether Webster's claims of ineffective assistance of counsel may be raised on direct appeal.

BACKGROUND

¶3 On the night of November 25, 2002, police officers for the City of Great Falls, Montana, responded to a report of suspicious activity in a hotel room. Webster, who had been staying in the room for two nights, was in the room when the officers arrived. During a search of the room, the officers found methamphetamine and drug paraphernalia.

¶4 A police officer who testified at trial told the jury that when he and another officer knocked on the hotel room door and asked to enter, Webster allowed them in. The two officers who then entered the room both testified Webster gave them permission to look around and that they found a container of methamphetamine under the bed and a brown bag containing methamphetamine next to the bed. The officers testified that, at first, Webster denied owning either item; he later told them the drugs were his and he was using them.

2

¶5    Webster testified at his trial.  He told the jury that, minutes before the police officers knocked on his door, he had found a shaving bag containing the drugs and drug paraphernalia in the parking lot of the hotel and taken the bag back to his room.  In response to his counsel's question as to what he intended to do with the bag, Webster said he was "thinking of" throwing the bag back out the door.  He also maintained the police officers forced their way into his hotel room and searched it without permission.  At that point in the trial, Webster's attorney asked the court for a recess.  Outside the presence of the jury and the prosecutor, counsel informed the court he believed Webster had committed perjury.  He moved for a mistrial and asked to be allowed to withdraw.

¶6    After an overnight recess, the court denied defense counsel's motions.  It explained to Webster that his options at that point were to continue the trial with his attorney or to continue *pro se*.  Webster told the court he wanted his attorney to continue representing him, and his testimony then resumed.

¶7    On cross-examination, the prosecutor asked Webster a series of questions concerning whether he gave the police officers permission to enter his hotel room.  When Webster's responses to those questions conflicted with the officers' earlier testimony, the prosecutor asked Webster whether he was saying the officers were lying and Webster answered, "Yes."  Webster's counsel did not object to this questioning.

¶8    The jury found Webster guilty of the charges against him, and the District Court subsequently sentenced him and entered judgment.  Webster appeals.  He contends his trial

3

counsel rendered ineffective assistance in connection with his own testimony and in failing to object to the prosecution's "were they lying" questions.

## STANDARD OF REVIEW

¶9 We analyze claims of ineffective assistance of counsel under the two-pronged test from *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. That test requires the defendant to establish that counsel's performance fell below an objective standard of reasonableness and that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *State v. Hendricks,* 2003 MT 223, ¶ 6, 317 Mont. 177, ¶ 6, 75 P.3d 1268, ¶ 6 (citations omitted). With regard to the first prong of the *Strickland* test, there is a strong presumption that trial counsel's performance was based on sound trial strategy and falls within the broad range of reasonable professional conduct. *Hendricks,* ¶ 7 (citation omitted). When the record is silent as to the reasoning behind counsel's allegedly deficient actions, we are unable to determine whether those actions were unreasonable, thereby overcoming the presumption that counsel's conduct falls within the reasonable range of professional conduct. As a result, when the record in a direct appeal is insufficient to determine whether counsel's performance was deficient, the issue is more appropriately brought in a petition for postconviction relief and the direct appeal must be dismissed. *Hendricks,* ¶¶ 9-11 (citations omitted).

## DISCUSSION

¶10 May Webster's claims of ineffective assistance of counsel be raised on direct appeal?

4

¶11 Webster claims his counsel rendered ineffective assistance during both his direct and cross-examination. He contends his attorney should not have asked him what he intended to do with the bag containing drugs after he testified that he found it out in the parking lot. In addition, while acknowledging an attorney's duty to disclose criminal conduct which occurs during trial pursuant to Rule 3.3(a)(2) of the Montana Rules of Professional Conduct, Webster contends his attorney breached the duty of client confidentiality by failing to take appropriate remedial steps before choosing to report perjury to the court. He asks us to adopt a new standard which would require his counsel, before reporting perjury, to meet with him to determine the scope of the allegedly false testimony and to ask him to give his testimony in narrative fashion, as suggested in *Nix v. Whiteside* (1986), 475 U.S. 157, 106 S.Ct. 988, 89 L.Ed.2d 123, and its progeny.

¶12 The District Court record does not reflect why defense counsel asked Webster what he intended to do with the drugs and drug paraphernalia. Nor does the record reveal counsel's litigation strategy about the defense theory or whether Webster went "off-script" and testified extemporaneously without his counsel's consent, resulting in counsel's report of perjury.

¶13 The definitive question regarding which of counsel's actions are of record and which are not is "why?" If the record does not explain why counsel took a particular course of action, the matter is best suited for postconviction proceedings, which permit a further inquiry into whether representation was ineffective. *See, e.g., State v. Bateman*, 2004 MT 281, ¶ 23, 323 Mont. 280, ¶ 23, 99 P.3d 656, ¶ 23 (citations omitted); *State v. J.C.*, 2004 MT

75, ¶ 25, 320 Mont. 411, ¶ 25, 87 P.3d 501, ¶ 25 (citations omitted); *State v. Turnsplenty,* 2003 MT 159, ¶ 17, 316 Mont. 275, ¶ 17, 70 P.3d 1234, ¶ 17 (citations omitted); *Soraich v. State*, 2002 MT 187, ¶ 22, 311 Mont. 90, ¶ 22, 53 P.3d 878, ¶ 22 (citations omitted). We conclude, therefore, that the question of whether Webster's trial counsel rendered ineffective assistance by asking him what he intended to do with the bag containing drugs, and then informing the court he believed Webster had committed perjury, is a matter which must be raised in a proceeding for postconviction relief, not on direct appeal. As a result, we also decline to consider the new standard advocated by Webster for appropriate remedial steps before counsel may report perjury to the court.

¶14 Webster also claims his counsel rendered ineffective assistance by failing to object when the prosecutor asked him, on cross-examination, if the police officers were lying. He contends these questions were improper because they were irrelevant and were asked only to make him look bad.

¶15 No Montana authority clearly establishes whether questioning a defendant about the truthfulness of other witnesses is proper; indeed, we have declined to establish a bright-line rule on the propriety of such questions. *See State v. Hart*, 2000 MT 332, ¶ 43, 303 Mont. 71, ¶ 43, 15 P.3d 917, ¶ 43. Moreover, the use or non-use of objections may be purely tactical. *See, e.g., Phyle v. Leapley* (8th Cir. 1995), 66 F.3d 154, 159. The record before us does not reflect the reasons behind counsel's failure to object to the questioning by the prosecution. As a result, we conclude this claim cannot be raised on direct appeal.

6

¶16    We dismiss this appeal without prejudice to the issues being raised in a postconviction relief proceeding.

/S/ KARLA M. GRAY

We concur:

/S/ W. WILLIAM LEAPHART
/S/ PATRICIA O. COTTER
/S/ JIM RICE
/S/ BRIAN MORRIS