*473 JUSTICE RICE
delivered the Opinion of the Court.
¶1 A jury convicted Timothy J. Longjaw (Longjaw) of aggravated burglary and sexual intercourse without consent in the Fourth Judicial District Court. Longjaw argues his convictions should be reversed because his standby counsel had a conflict of interest, the District Court erred by modifying the jury instructions regarding aggravated burglary during jury deliberations, and his counsel was ineffective for failing to obtain an independent medical expert. The State concedes reversible error on the instruction issue and requests that Longjaw’s conviction for aggravated burglary be vacated on that basis. Because Longjaw was also convicted of sexual intercourse without consent, we must undertake review of the remaining two issues:
¶2 1. Did Defendant’s standby counsel have an active conflict of interest that requires reversal of the Defendant’s sexual intercourse without consent conviction?
¶3 2. Did the Defendant’s counsel render ineffective assistance by failing to obtain an independent medical expert to aid in the defense?
FACTUAL AND PROCEDURAL BACKGROUND
¶4 Longj aw was charged in December 2009 with aggravated burglary and sexual intercourse without consent. Longjaw forced his way into the apartment of a mentally disabled woman with whom he was acquainted and sexually assaulted her. The victim’s daughter called the police to request a welfare check on her mother. When the police arrived at the apartment, they found Longjaw asleep and intoxicated in the living room. The victim said Longjaw ripped off her bra and forced her to have sex with him and repeatedly asked the officers to remove Longjaw from her apartment. The victim was examined by a registered nurse from the First Step sexual assault program at St. Patrick’s Hospital in Missoula. The registered nurse found that the victim’s injuries were inconsistent with consensual sex.
¶5 Longjaw was convicted of both charges after a jury trial in the Fourth Judicial District Court, Missoula County, in September 2010. The District Court sentenced Longjaw to 40 years in the Montana State Prison for aggravated burglary and 60 years in the Montana State Prison for sexual intercourse without consent, the sentences to run concurrently.
¶6 Longjaw was represented by several attorneys during pre-trial proceedings. Longjaw was first represented by Katie Green from the Office of the Public Defender, but due to a conflict of interest between Longjaw and another client of the office, William Boggs was contracted to represent Longjaw as conflict counsel. Disagreements between *474 Boggs and Longjaw arose, and the case was assigned to Jordan Kilby and Gregory Hood of the Office of the Public Defender. The record indicates there were personality conflicts within these attorney-client relationships. On August 20,2010, Longjaw filed a motion for leave to represent himself. The District Court conducted a hearing on August 24 on Longjaw’s motion and thereafter denied the request. On August 31, Longjaw renewed his request, and after questioning Longjaw and determining that Longjaw understood the dangers associated with self-representation, the District Court granted his request and directed that Kilby and Hood would act as standby counsel for the trial.
¶7 On the morning of trial, Kilby and Hood informed the District Court that a witness on the State’s witness list, Jennifer Haygood (Haygood), had previously been represented by their regional public defender office on a different but tangentially related matter, which presented a potential conflict of interest. Kilby said, “I think even as standby counsel we might have a problem. But it is our agency’s position that we don’t,” adding that the potential conflict had been through two levels of review by the Office of the Public Defender. The court stated it did not have an opinion on the conflict at that point and would have to think about it further. The State indicated it would not call Haygood as a witness. No further inquiry was made by the court, and the case proceeded to trial. During trial, Longjaw called Haygood as a witness and questioned her briefly.
¶8 In response to Longjaw’s expressed concerns about obtaining a second medical opinion and other issues, the District Court conducted a hearing on April 29, 2010. Boggs, who was then representing Longjaw, explained that, in his view, a second opinion might not be necessary because he anticipated that an interview with the medical staff at First Step would “obviate the need for a second opinion, but I’m not certain of that.” Boggs indicated he was not then inclined to request a second opinion, stating “I’m not going to do it unless the Court orders me to, unless I think it’s important to the case to get a second opinion. And I’m just not in a position to know that yet.”
¶9 During jury deliberations, the jury sent a note to the court asking for clarification on jury instruction number 7, which read: “[a] person commits the offense of aggravated burglary if the person knowingly enters and remains unlawfully in an occupied structure ...” (emphasis added). The court sent a note to the jury changing jury instruction number 7 to read: “[a] person commits the offense of aggravated burglary if the person knowingly enters or remains unlawfully in an occupied structure ...” (emphasis in original). The court similarly *475 modified the language injury instruction number 8.
DISCUSSION
¶10 1. Did the Defendant’s standby counsel have an active conflict of interest that requires reversal of the Defendant’s sexual intercourse without consent conviction?
¶11 Criminal defendants are guaranteed the right to assistance of counsel through the Sixth Amendment of the United States Constitution and Article II, Section 24 of the Montana Constitution. State v. St. Dennis, 2010 MT 229, ¶ 28, 358 Mont. 88, 244 P.3d 292 (citing Kills On Top v. State, 2000 MT 340, ¶ 37, 303 Mont. 164, 15 P.3d 422). The right to “conflict-free representation” guaranteed in the Sixth Amendment is applied to the states through the Due Process Clause of the Fourteenth Amendment. St. Dennis, ¶ 28. We review the conflict of interest issue de novo. St. Dennis, ¶ 19.
¶12 The State notes a conflict of authority nationally on the question of whether the right to conflict-free representation extends to standby counsel and the absence of Montana precedent on the point. Longjaw argues that the right should extend to standby counsel and offers Washington v. McDonald, 22 P.3d 791 (Wash. 2001), in support. In McDonald, the Supreme Court of Washington extended the right of conflict-free representation to standby counsel, holding that prejudice is presumed and reversal is required when an actual conflict existed or when the trial court reasonably should have known about a conflict but failed to properly inquire into the conflict. McDonald, 22 P.3d at 795. Longjaw urges adoption of the rules stated in McDonald, arguing that “where counsel raises an issue of conflict of interest to the district court, reversal should be automatic because of the fundamental seriousness of a Sixth Amendment violation.”
¶13 However, the central issue briefed by the parties, which we deem dispositive, is whether an actual conflict existed in this case. Thus, assuming arguendo that the right to conflict-free representation extends to standby counsel, we turn to that central issue. We decline to address further, as unnecessary under these facts, the various rules and analyses adopted by Washington and other jurisdictions.
¶14 Noting “the unique nature of public defender offices as opposed to private law firms,” we held that “the better approach for analyzing purported conflicts of interest within [the Office of the Public Defender] is the case-by-case approach.” St. Dennis, ¶¶ 30, 32. “Under the case-by-case approach, if defendant proves that an actual conflict exists, he or she must then demonstrate that counsel’s performance was adversely affected by the conflict.” St. Dennis, ¶ 29 (citing Illinois *476 v. Morales, 808 N.E.2d 510, 514-15 (Ill. 2004)). See also Thurston v. State, 2004 MT 142, ¶ 17, 321 Mont. 411, 91 P.3d 1259 (“[a] defendant claiming ineffective assistance of counsel due to a conflict of interest must show: (1) that counsel actively represented conflicting interests; and (2) that an actual conflict of interest adversely affected counsel’s performance.”). If we determine no actual conflict existed, “we need not examine counsel’s performance to determine if such performance was adversely affected by the ostensible conflict.” St. Dennis, ¶ 37.
¶15 We have explained that “[a]n actual conflict, as opposed to the mere possibility of a conflict, is necessary.” State v. Deschon, 2002 MT 16, ¶ 18, 308 Mont. 175, 40 P.3d 391 (Deschon I). “A defense attorney has an actual conflict when he is required to make a choice advancing another client’s interests to the detriment of his client’s interest.” Deschon I, ¶ 18 (citing U.S. v. Gantt, 140 F.3d 249, 254 (D.C. Cir. 1998)) (citation omitted). In St. Dennis, we cited the discussion concerning potential and actual conflicts provided in People v. Christian, 41 Cal. App. 4th 986 (Cal. 1996). St. Dennis, ¶ 33. Christian explained that “[t]here is a possibility of conflict, then, if the interest of the defendants may diverge at some point so as to place the attorney under inconsistent duties. There is an actual, relevant conflict of interests if, during the course of the representation, the defendants’ interests do diverge with respect to a material factual or legal issue or to a course of action.” Christian, 41 Cal. App. 4th at 992 (quoting Cuyler v. Sullivan, 446 U.S. 335, 100 S. Ct. 1708 (1980)).
¶16 Longjaw argues a conflict of interest existed because his standby counsel previously represented Haygood in another matter, described by Hood as “tangentially” related to Haygood’s involvement in this case. In response to defense counsel’s concerns about a potential conflict, the State confirmed its position that, though Haygood had been listed as a witness, it would not call her to testify, and the State did not do so. Representing himself at trial, Longjaw called Haygood to testify. Longjaw questioned her briefly and the record reveals no involvement by standby counsel regarding Haygood, nor is any such involvement asserted by Longjaw.
¶17 “A defense attorney has an actual conflict when he is required to make a choice advancing another client’s interests to the detriment of his client’s interest.” Deschon I, ¶ 18 (citation omitted). Although a potential conflict may have been present here, we conclude that the circumstances did not progress to an actual conflict wherein standby counsel were required to make a choice to the detriment of Longjaw’s interests. Where there is no actual conflict, we need not “examine counsel’s performance to determine if such performance was adversely *477 affected by the ostensible conflict.” St. Dennis, ¶ 37.
¶18 2. Did the Defendant’s counsel render ineffective assistance by failing to obtain an independent medical expert to aid in the defense? ¶19 “In considering ineffective assistance of counsel claims on direct appeal, we apply the two-pronged test set forth by the United States Supreme Court in Strickland v. Washington (1984), 466 U.S. 668, 104 S. Ct. 2052.” State v. Deschon, 2004 MT 32, ¶ 31, 320 Mont. 1, 85 P.3d 756 (Deschon II). The defendant must establish (1) “that counsel’s performance was deficient or fell below an objective standard of reasonableness,” and (2) “prejudice by demonstrating that there was a reasonable probability that, but for counsel’s errors, the result of the proceeding would have been different.” Deschon II, ¶ 31. This Court may review a claim of ineffective assistance of counsel on direct appeal only when the record “fully explains why counsel took, or failed to take, action in providing a defense for the accused.” Deschon II, ¶ 32. ¶20 In State v. White, 2001 MT 149, ¶ 20, 306 Mont. 58, 30 P.3d 340, we explained that “the definitive question that distinguishes and decides which actions are record and which are non-record, is whyl... [D]oes the record fully explain why counsel took the particular course of action?” (Emphasis in original.) When ineffective assistance of counsel claims are non-record based, the proper avenue for review is through a petition for postconviction relief. State v. Webster, 2005 MT 38, ¶ 9, 326 Mont. 112, 107 P.3d 500.
¶21 Longjaw ultimately represented himself at trial but claims that his counsel’s earlier failure to obtain an independent medical expert “to review the records of the physical examination of the alleged victim and to testify at trial” constitutes ineffective assistance.
¶22 The record reveals that, at the April 29, 2010, hearing, then-counsel Boggs indicated an independent medical expert may not be necessary because he believed the necessary information could be obtained by examination of the medical providers. Longjaw was represented by three other attorneys, but this statement by counsel Boggs is the only reference by counsel to the issue in the record. Thus, the record does not fully explain “why” an independent medical examination or expert was not ultimately obtained by Longjaw’s counsel, and the claim cannot be reviewed on appeal. Longjaw may pursue the claim in postconviction relief proceedings.
¶23 In response to Longjaw’s challenge to the District Court’s revision of the jury instructions for aggravated burglary during the jury’s deliberations, the State “concedes under the particular facts presented in this record that Longj aw’s aggravated burglary conviction should be reversed.” We therefore reverse Longjaw’s conviction for aggravated *478 battery.
¶24 Longjaw’s conviction for sexual intercourse without consent is affirmed. His conviction for aggravated burglary is reversed. We remand this matter for entry of an amended judgment.
¶25 Affirmed in part, reversed in part, and remanded.
CHIEF JUSTICE McGRATH, JUSTICES COTTER and MORRIS concur.